IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CV-00018-M

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY as subrogee of Joey W. Williford,<br><br>Plaintiff,<br><br>v.<br><br>STIHL INCORPORATED<br><br>Defendant. | ORDER |

This matter comes before the court on Defendant STIHL Incorporated's Motion to Dismiss. DE 10. Plaintiff, Pennsylvania National Mutual Casualty Insurance Company (Penn National), argues STIHL Incorporated is liable as the designer, manufacturer, or seller of a hedge trimmer lawn tool that caught fire and caused property damage to its subrogor, Mr. Joey Williford. DE 1-1. STIHL contends Penn National's Complaint fails to allege nonconclusory and unambiguous facts showing STIHL is a proper defendant or that the elements of a products-liability claim are plausibly met. DE 11 at 1. Although the Complaint is not an exemplar in the art of pleading, the court concludes Penn National has pleaded plausible facts that rise above mere speculation as to STIHL's negligence. The Complaint alleges STIHL owed Mr. Williford a duty to provide a reasonably safe product—a STIHL hedge trimmer lawn tool—for its intended use, that duty was breached when STIHL supplied a hedge trimmer that caught fire while Mr. Williford was properly using it, and that fire resulted in property damage. Accordingly, STIHL's motion is denied.

1

## I. Plaintiff's Factual Allegations

The following are factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative Complaint [DE 1], which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff, Penn National, is an insurance company based in Pennsylvania and the insurer of a North Carolina residential property owned by Joey Williford (subrogor). DE 1-1 ¶¶ 1–3. Defendant, STIHL Incorporated (STIHL), is a corporation with its principal place of business located in Virginia Beach, Virginia. *Id.* ¶ 4. At all relevant times, STIHL was in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing and/or selling hedge trimmer lawn tools, which include rechargeable batteries, including the hedge trimmer and rechargeable battery at issue in this case. *Id.* ¶¶ 5, 8.

On February 19, 2022, a fire occurred at Mr. Williford's property. *Id.* ¶ 9. The fire caused damage to the property and to Mr. Williford's personal property located therein. *Id.* An investigation into the origin of the fire revealed it was started by a defective rechargeable battery for the STIHL hedge trimmer. *Id.* ¶ 10. At the time, Mr. Williford was using the product as intended and there are no reasonable alternative explanations for the fire. *Id.*

Penn National's Complaint alleges a single negligence count against STIHL Incorporated alleging that STIHL "designed, manufactured, assembled, tested, inspected, marketed, distributed, sold, and/or placed into the stream of commerce the subject hedge trimmer lawn tool and corresponding rechargeable batteries. *Id.* ¶ 8. Penn National's negligence claim asserts that the product was defective in design, manufacturing, and lacked adequate warnings. *Id.* ¶¶ 15–16.

The Complaint alleges that Mr. Williford suffered damage to his property and additional expenses in an amount in excess of $25,000 as a direct and proximate result of STIHL's negligent conduct. *Id.* ¶¶ 11, 17. To the extent these damages were covered under insurance policies that Penn National had in full force and effect with Mr. Williford, claim monies were paid to him consistent with the policy's terms and conditions. *Id.* ¶ 12. As a result, Penn National is subrogated to the claims asserted in this action. *Id.*

Penn National contends at the time of the hedge trimmer's sale, STIHL had reason to know its product was being relied upon to be safely used in a reasonable manner, free from any defects. *Id.* ¶ 15. Penn National further claims that the product was not reasonably safe and was, in fact, defective for the following reasons: the product (1) did not protect against short circuiting between the positive bus work of the battery pack and the negative battery casing, (2) did not prevent foreseeable short circuiting and fires because of failure to secure each battery cell to prevent contact between surfaces, (3) had damaged battery cells as a result of manufacturing, (4) had an inadequate battery casing for the intended uses of the product as advertised by STIHL, (5) could not withstand foreseeable impacts in the environment the product was intended for, (6) lacked adequate warnings and precautions for protecting users from the dangers of short circuiting, battery leakage, and potential explosions that STIHL was aware of, but failed to reasonably guard against, and (7) used insufficient composites for the rechargeable battery casing so as to allow the fire to spread from the battery cells into the home. *Id.* ¶ 16. Accordingly, Penn National alleges STIHL is liable for negligence.

## II.     Procedural Posture

Penn National filed a civil action in the Superior Court of North Carolina, County of Sampson, on December 22, 2022. DE 1 ¶ 1; DE 1-1. That action was removed to this court under

3

federal diversity jurisdiction on February 3, 2023. DE 1. STIHL moved to dismiss Penn National's Complaint for failure to state a claim on February 10, 2023. DE 10. STIHL filed an accompanying memorandum in support. DE 11. Due to a docketing error, Penn National moved for an extension of time to respond to STIHL's motion to dismiss. DE 15. STIHL opposed the motion. DE 19. This court denied Penn National's motion, being unable to find excusable neglect based on Penn National's calendaring error. DE 22.

### III. Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, the court must accept all the well-pleaded factual allegations contained within the complaint as true and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without

4

sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## IV. Discussion

This case has been properly removed to the United States District Court for the Eastern District of North Carolina under federal diversity jurisdiction; therefore, this court applies North Carolina substantive law. *See, e.g., Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 306 (4th Cir. 2020) ("'Because this appeal invokes our diversity jurisdiction' to resolve a contract dispute, we apply state law.").

In North Carolina, product liability actions are governed by statute. *See* N.C.G.S. § 99B-1, *et seq.* A product liability action is defined as "any action brought for or on account of . . . property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." *Id.* § 99B-1(3).

"A products liability claim normally contemplates injury or damage caused by a defective product . . . and recovery is premised on either negligence or on the contract principles of warranty." *Hill v. Biomet, Inc.*, No. 5:20-CV-162-D, 2022 WL 722206, at *2 (E.D.N.C. Mar. 9, 2022) (emphasis omitted). "In the usual case, where a product liability claim sounds in tort, as the parties suggest plaintiffs' claims do here, the plaintiff must prove duty, breach, causation, and

5

damages." *Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 986 (E.D.N.C. 2015) (citing *Bryant v. Adams*, 116 N.C. App. 448, 465, 448 S.E.2d 832 (1994)). Those elements are satisfied as to a design or manufacturing defect if the plaintiff demonstrates "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000). "In North Carolina, a failure to warn claim requires the plaintiff to prove that [1] the defendant unreasonably failed to provide an adequate warning, [2] such failure was the proximate cause of the plaintiff's damages, and [3] the product posed a substantial risk of harm without an adequate warning either at the time of or after leaving the manufacturer's control." *Hill*, 2022 WL 722206, at *2 (emphasis omitted); *see also* N.C.G.S. § 99B-5(a).

Penn National's Complaint alleges plausible facts that STIHL, as a manufacturer, designer, and/or seller of the hedge trimmer with rechargeable batteries is liable in a products-liability action sounding in negligence. Penn National alleges Mr. Williford was using the STIHL hedge trimmer in an ordinary manner when it caught fire, caused damage to Mr. Williford's property, and that fire was caused by a list of defects in the hedge trimmer's batteries. DE 1-1 ¶ 16 (listing the defects in the hedge trimmer and battery that led to the fire). The defects relate to the design and manufacturing of the product, including "a failure by Stihl to properly install and/or secure each battery cell to prevent any contact between surfaces so as to prevent foreseeable short-circuit and the fire," and relate to the inadequate warnings placed on the product, including "inadequate warnings and precautions were provided for protecting oneself from the dangers of short circuiting, battery leakage and potential explosions that Stihl was aware of, but did not reasonably guard against." *Id.* This court infers negligence when there is an actual defect in the subject product.

6

*Red Hill Hosiery Mill,* 138 N.C. App. at 75, 530 S.E.2d at 326 ("An inference of a manufacturer's negligence arises upon proof of an actual defect in the product."). Moreover, this court also infers negligence even without an allegation of defect when there is "a showing that the product malfunctioned after it was put to its ordinary use." *Sparks,* 134 F. Supp. 3d at 986; *see also Teague v. Johnson & Johnson, Inc.,* 578 F. Supp. 3d 743, 747 (E.D.N.C. 2022) ("North Carolina's courts recognize that a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use. . . . This is true even where a plaintiff does not produce evidence of a specific defect." (internal quotation marks omitted)). Penn National has sufficiently alleged an actual defect in the product and alleged that the product malfunctioned while being put to ordinary use. This court can plausibly infer STIHL's negligence. Penn National has stated a claim.

Moreover, Penn National adequately pleaded breach. A plaintiff satisfies the breach element of a products-liability claim when the plaintiff demonstrates that the product was defective at the time it left the control of the defendant and the defect was the result of the defendant's negligence. *See Sparks,* 134 F. Supp. 3d at 986. Penn National pleaded seven defects it alleges the hedge trimmer and battery had at the time the trimmer caught fire. Penn National alleges that the product (1) did not protect against short circuiting between the positive bus work of the battery pack and the negative battery casing, (2) did not prevent foreseeable short circuiting and fires because of failure to secure each battery cell to prevent contact between surfaces, (3) had damaged battery cells as a result of manufacturing, (4) had an inadequate battery casing for the intended uses of the product as advertised by STIHL, (5) could not withstand foreseeable impacts in the environment the product was intended for, (6) lacked adequate warnings and precautions for protecting users from the dangers of short circuiting, battery leakage, and potential explosions that

7

STIHL was aware of, but failed to reasonably guard against, (7) used insufficient composites for the rechargeable battery casing so as to allow the fire to spread from the battery cells into the home. DE 1-1 ¶ 16. STIHL argues that these facts are merely "[b]ald assertions of inadequacy or insufficiency, with no factual basis to explain how the product design was inadequate or insufficient." DE 11 at 9–10. However, this list of defects is more than bare allegations. Penn National has provided the court with facts pertaining to how STIHL was negligent in designing and manufacturing its product and negligent in failing to place adequate warnings on STIHL's product. Penn National has plausibly alleged breach of duty.[1]

Penn National has also pleaded that STIHL caused the breach. Penn National alleges that the hedge trimmer is a STIHL product. DE 1-1 ¶ 5. STIHL manufactured, designed, and sold the hedge trimmer with rechargeable batteries. *Id.* ¶¶ 5, 8. The hedge trimmer and batteries caught fire during ordinary use and had the above alleged defects. *Id.* ¶¶ 9–10, 16. Those defects were caused by STIHL because the design and manufacturing did not protect against those defects and the trimmer catching fire and STIHL manufactured, designed, or sold the product with those defects. *See id.* ¶ 16.

Finally, Penn National has adequately pleaded injury and damages. Penn National alleges that the hedge trimmer and batteries caught fire at the subject property resulting in substantial

---

[1] The court again notes "North Carolina law recognizes that 'in a products liability action, based on tort or warranty, a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use.'" *Teague*, 578 F. Supp. 3d at 748 (quoting *Red Hill*, 138 N.C. App. at 76–77, 530 S.E.2d 321). Therefore, a "plaintiff would not need to 'produce evidence of a specific defect' to defeat a motion for summary judgment, if she presented evidence from which a defect could be inferred." *Teague*, 578 F. Supp. 3d at 748 (quoting *DeWitt v. Eveready Battery Co.*, 144 N.C. App. 143, 150, 550 S.E.2d 511, 516 (2001), *aff'd*, 355 N.C. 672, 565 S.E.2d 140 (2002)). Penn National has done more than required by producing evidence of specific defects at the pleading stage.

damage to the property and to Mr. Williford's personal property located therein. *Id.* ¶ 9. The above allegations link the origin of the fire to the trimmer's defective rechargeable battery. *Id.* ¶¶ 10, 16. As a result of the fire, Mr. Williford incurred damages to his property, as well as the imposition of additional expenses and hardship, in excess of $25,000. *Id.* ¶ 11. Accordingly, the Penn National has plausibly alleged STIHL's breach caused damages to Penn National's subrogor, Mr. Williford.

STIHL advances several unavailing arguments that the Complaint should be dismissed. First, STIHL argues Penn National's allegation that STIHL "designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and/or placed into the stream of commerce the subject hedge trimmer lawn tool and corresponding rechargeable batteries" is conclusory. DE 11 at 5. Although Penn National's Complaint is not a model in the art of pleading, the Complaint alleges that Mr. Williford used a STIHL hedge trimmer and the battery in the trimmer caught fire and damaged his property. DE 1-1 ¶¶ 8–10, 15–16. STIHL does not dispute that Mr. Williford was using a STIHL hedge trimmer that caught fire nor could they at this stage. Penn National has sufficiently alleged that STIHL designed, manufactured, or sold the hedge trimmer that caught fire and STIHL can prove in discovery that they did not manufacture, design, or sell the hedge trimmer with rechargeable batteries. However, Penn National's Complaint "is sufficient 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and this is all that is required at this stage." *Teague*, 578 F. Supp. 3d at 748 (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).[2]

---

[2] STIHL also argues that the "and/or" in the pleading introduces an ambiguity that renders the pleadings deficient. DE 11 at 7–9. The cases STIHL cites, however, are out-of-circuit cases relating to "and/or" being used to render ambiguous which defendant engaged in which alleged act. *See* DE 11 at 8 (citing *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, *3 & n.5 (D.N.J. Dec. 16, 2015); *Drew Technologies, Inc. v. Robert Bosch, L.L.C.*, 2014 WL 562458, *3 (E.D.

9

Next, STIHL argues Penn National's allegations of design defect are bare and conclusory. DE 11 at 9–13. The court disagrees. The host of alleged defects, DE 1-1 ¶ 16, coupled with the simple fact that Mr. Williford alleges he was using STIHL's hedge trimmer in an ordinary manner when it caught fire and caused damage, are sufficient allegations with factual enhancement to support Penn National's negligence claim based on design defects. *See Teague*, 578 F. Supp. 3d at 747 ("North Carolina's courts recognize that a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use. . . . This is true even where a plaintiff does not produce evidence of a specific defect." (internal quotation marks omitted)).

STIHL then argues Penn National's causation argument consists of an insufficient, conclusory single paragraph: "Investigation into the origin and cause of the fire revealed it was caused by a defective rechargeable battery for the trimmer." DE 11 at 11–16. STIHL is mistaken. Penn National asserts that Mr. Williford was using a STIHL hedge trimmer that caught fire and that hedge trimmer "short circuited between the positive bus work of the battery pack and the negative battery casing while being used as intended, which should have been protected against," "there was a failure by Stihl to properly install and/or secure each battery cell to prevent any contact between surfaces so as to prevent foreseeable short-circuit and the fire," "the battery casing was inadequate for the intended uses of the product as advertised and promoted by Stihl," and "the

---

Mich. Feb. 13, 2014). Here, STIHL is the only defendant. Moreover, Penn National's allegations are plain in stating Mr. Williford was using a STIHL hedge trimmer. Penn National's pleading is that its subrogor, Mr. Williford, used a STIHL hedge trimmer with rechargeable batteries that caught fire and therefore STIHL is liable because STIHL is liable for its own defective product. Penn National is not required to know, prior to discovery, at what point STIHL placed the battery into the hedge trimmer or what precise role STIHL had in the production of its own hedge trimmer. That is what discovery is for. At this stage, the allegations are sufficient to state a plausible claim that STIHL is liable for STIHL's hedge trimmer that caught fire during ordinary use.

battery casing was not made to withstand foreseeable impacts in the environment the product was intended for." DE 1-1 ¶ 16 (a), (b), (d), (e). Penn National has sufficiently alleged that the hedge trimmer was a STIHL product and therefore these alleged defects amount to more than conclusory or speculative allegations that STIHL's negligence in designing, manufacturing, and selling its defective product caused the fire and damages.

STIHL then argues Penn National failed to allege or acknowledge a required showing for a design-defect claim, namely that (1) the defendant unreasonably failed to adopt a reasonable alternative design or (2) the product's design was so unreasonable that no reasonable person would use it. DE 11 at 13 (citing N.C.G.S. § 99B-6(a)(1)-(2)). However, a hedge trimmer designed with defects that cause it to catch fire during ordinary use is plausibly designed so unreasonably that no reasonable person would use it.

STIHL next argues that Penn National's claims of manufacturing defect are conclusory and insufficient. DE 11 at 13–15. STIHL neglects to view the Complaint allegations as a whole. Penn National argues STIHL's hedge trimmer caught fire during ordinary use and a series of defects with the trimmer's battery, including improper casing and damage to the battery cells, caused the fire. DE 1-1 ¶ 16. Those allegations state a plausible claim that STIHL is liable for the manufacturing defects in STIHL's hedge trimmer that caused the trimmer and batteries to catch fire during ordinary use.

Finally, STIHL argues Penn National failed to plead a products-liability negligence claim on a theory of inadequate warnings. DE 11 at 15–17. "In North Carolina, a failure to warn claim requires the plaintiff to prove that the defendant [1] unreasonably failed to provide an adequate warning, [2] such failure was the proximate cause of the plaintiff's damages, and [3] the product 'posed a substantial risk of harm' without an adequate warning either at the time of or after leaving

11

the manufacturer's control." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (citing N.C.G.S. § 99B-5(a)). Penn National alleges "inadequate warnings and precautions were provided for protecting oneself from the dangers of short circuiting, battery leakage and potential explosions that Stihl was aware of, but did not reasonably guard against." DE 1-1 ¶ 16(f). This allegation, coupled with the product malfunction during ordinary use without warning, is sufficient to state a claim for negligence based on inadequate warnings.

STIHL argues "Plaintiff does not plead facts identifying what warnings were provided with the battery, or facts explaining how those warnings were inadequate." DE 11 at 15. However, "[w]hat other warnings were provided are not required to make the determination of whether the factual allegations in the complaint give rise to a reasonable inference that defendants acted unreasonably in failing to provide the relevant warnings." *Teague*, 578 F. Supp. 3d at 751. The hedge trimmer caught fire and damaged Mr. Williford's property. That fire was caused by a defect in the design and manufacture of the trimmer with rechargeable batteries. The hedge trimmer and batteries contained no warnings that ordinary use of the hedge trimmer would cause fire and injury.

STIHL then argues Penn National did not plead facts showing that a warning would have changed Mr. Williford's behavior or that a different warning would have avoided the fire. DE 11 at 16–17. However, the court can reasonably infer that an adequate warning alerting Mr. Williford to the danger that using STIHL's hedge trimmer in an ordinary manner would cause it to catch fire would have caused Mr. Williford to change his behavior to avoid that fire. *See, e.g., Hall*, 846 F.3d at 761 (recounting that at the 12(b)(6) stage the court accepts "the facts as alleged by Plaintiffs . . . as true and draw[s] all *reasonable inferences* in Plaintiffs' favor." (emphasis added)). At this stage, Penn National has pleaded a plausible claim of STIHL's negligence based on a failure-to-warn theory of products liability.

12

## V. Conclusion

Penn National alleges that its subrogor, Mr. Williford, was using a STIHL hedge trimmer with rechargeable batteries in an ordinary manner when the trimmer and batteries caught fire and damaged his property. Penn National alleges a series of defects in design, manufacturing, and warnings caused the fire and damage. Penn National has stated a plausible claim that STIHL is liable for the defects and injuries caused by its allegedly defective hedge trimmer with rechargeable batteries. Accordingly, STIHL's motion is DENIED.

SO ORDERED this 4th day of August, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE